

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAE BINNIFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 10-cv-5200 |
| MARK DIAMOND; TERRY ) | |
| DIAMOND; OSI FINANCIAL ) | Judge John W. Darrah |
| SERVICES, INC.; and UNITED ) | |
| CONSTRUCTION OF AMERICA, INC., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, Mae Binnifield ("Binnifield"), filed a Complaint on August 17, 2010, against Mark Diamond ("Diamond"); Terry Diamond; OSI Financial Services, Inc. ("OSI"); and United Construction of America, Inc. ("United Construction"), (collectively, the "Defendants"). Binnifield alleges the following counts: violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (Count I); violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.* (Count II); violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.* (Count III); violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS § 505, *et seq.* (Count IV); violation of the High Risk Home Loan Act ("HRHLA"), 815 ILCS § 137, *et seq.* (Count V); breach of fiduciary duty (Count VI); breach of contract (Count VII); common law fraud (Count VIII); and civil conspiracy (Count IX). Before the Court is Defendants' Motion to Dismiss; they move to dismiss all counts except for breach of contract. Binnifield has agreed to dismiss the counts for breach of fiduciary duty (Count VI) and civil conspiracy (Count VIII); thus,

these counts are not addressed. All counts that are now subject to Defendants' Motion to Dismiss are brought against all Defendants, except for Count V, which is brought only against OSI and Diamond. Binnifield asserts that the Court has federal jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Binnifield's state-law claims pursuant to 28 U.S.C § 1367.

## BACKGROUND

The following facts are drawn from Binnifield's Complaint and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Binnifield's claims arise from allegations that Defendants have engaged in predatory lending and home-improvement scams. This case is one among many in a long history of litigation in various courts.[1] Binnifield initially filed a

---

[1] The Court may take judicial notice of proceedings in other courts. *Fletcher v. Menard Correctional Center*, 623 F.3d 1171, 1173 (7th Cir. 2010) ("We can take judicial notice of prior proceedings in a case involving the same litigant.") Diamond and OSI were defendants in *Federal Trade Cmm'n, et al. v. OSI Fin. Serv., Inc., et al.*, No. 02-cv-5078 (N.D. Ill.) In November 2003, the FTC entered into a Consent Decree ("2003 Consent Decree"), which enjoined Diamond and OSI from making misrepresentations about the terms and costs of mortgages, from conducting any mortgage closing, and required that Diamond and OSI monitor their mortgage closings with the FTC. (*Id.* at 6-7.) In 2003, the Federal Trade Commission and the Illinois Attorney General filed a complaint for injunctive relief against Diamond. Binnifield represents that Diamond is enjoined from conducting home-repair business based on the outcome of that suit, but a copy of such a court order has not been provided. In 2009, the Illinois Attorney General filed a complaint for injunctive relief against Diamond, OSI, and United, alleging violations of the ICFA and the Home Repair and Remodeling Act. (Compl., Ex. C.) The complaint states that 50 consumers have filed complaints with the Illinois Attorney General's office, one of which is Binnifield. (*Id.*) Binnifield represents that Diamond, OSI, and United are enjoined from conducting home-repair business in the State of Illinois, but a copy of the court order has not been provided. Since 2003, Diamond and OSI have been defendants in other lawsuits in this district. *See, e.g., Harris v. OSI Fin. Serv., et al.*, 595 F. Supp. 2d 885 (N.D. Ill. 2009); *Levey v. CitiMortgage, et al.*, No. 07-cv-2678, 2009 WL 2475222 (N.D. Ill. Aug. 10, 2009).

2

complaint in state court on July 21, 2008 identical to her instant Complaint.[2] (Compl. Ex. D.) On August 17, 2009, Binnifield voluntarily dismissed the state-court complaint.

Binnifield is an African-American woman who is a retired healthcare worker that lives on social security, a pension, and wages from part-time employment. (Compl. ¶¶ 5-6.) In early 2007, Binnifield received a phone call in which a woman asked her if she would like to refinance her home and use the proceeds to remodel her home. (*Id.* ¶¶ 20-21.) Binnifield had a problem with the plumbing in her basement, which had resulted in cracks in her cement sidewalks in the front and back of her home. (*Id.* ¶ 22.) On September 11, 2007, Binnifield was interviewed by Mark Diamond, who is the president of OSI. (*Id.* ¶¶ 7, 23.) Diamond filled out a Uniform Residential Loan Application for Binnifield, who indicated that she owed $173,306.80 on her residential loan but that her residence was worth $257,000. (*Id.* ¶ 24.) Binnifield proceeded to apply for a $192,750 refinancing loan on her residence. (*Id.* ¶ 24.) The refinancing loan closing, which occurred at Binnifield's home, was held on September 29, 2007; and Diamond was present. (*Id.* ¶ 25.) The settlement charges from the refinancing were $11,946.31: this included costs for payoffs of two of Binnifield's bills; payment to the lender, Delta Funding; a processing fee; flood and tax services fees; and two appraisals. (*Id.* ¶ 27.) After payment on her loan to her original lender, First Franklin, Binnifield was due $7,255 in loan proceeds. Binnifield did not receive the check, however, because the Defendants kept the proceeds. A week after the closing, Binnifield repeatedly called Diamond; and he wrote her a check for $1,000. Before the refinancing, Binnifield paid

---

[2] Defendants allege that certain portions of Binnifield's state-court Complaint were stricken but have not provided any evidence of this.

3

$1,253.38 a month for her mortgage, taxes, and insurance. (*Id.* ¶ 40.) After the refinancing, she paid $1,326.68, not including taxes or insurance. (*Id.*) Binnifield alleges that she specifically instructed Diamond that she wanted her taxes and insurance escrowed and that the proceeds of refinancing were to be used to pay an IRS lien (which has not been paid). (*Id.* ¶¶ 40-41.)

Also during this time, Binnifield went to OSI's office and met with Diamond, who showed her the basement of his office building and represented that he would assist Binnifield in modeling her basement in the same manner. (*Id.* ¶ 31.) Binnifield agreed, but Diamond told Binnifield that she could not select her own contractor and that Terry Diamond's contracting firm, United, would conduct the remodeling job. (*Id.* ¶ 32.) During the same time period, a man from United came to Binnifield's home and inspected her basement and sidewalk and wrote a Home Repair Contract, which is dated October 11, 2007. (*Id.* ¶ 33.) The contract states: "Supply and repair the following: Repair plumbing New ceiling in 1st and 2nd bedroom. New Screen on floor window." (*Id.* ¶ 34.) Subsequently, Binnifield alleges that someone removed the ceiling and screen repair and revised the contract, which then stated: "Supply and repair the following: Repair plumbing, New front walk and New rear area next to back porch and area leading to basement." (*Id.* ¶ 35.) The price for services rendered under both drafts of the contract was $5,000. (*Id.* ¶ 36.) Binnifield alleges that no cement work was ever performed in the front or back of her residence and no screen was replaced. (*Id.* ¶ 38.) Other than the plumbing contractor, Binnifield was not allowed to select the contractor that would conduct the home repairs on her residence. Binnifield was dissatisfied with the work performed (and not performed) on her residence and called Diamond; he never

responded. Because Plaintiff only received $1,000 from Diamond, she essentially paid $6,255.67 for faulty repair work, most of which was not performed. Binnifield alleges, on information and belief, that Diamond received compensation from the lender and other service providers. (*Id.* ¶ 45.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (*Twombly*). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

5

Exhibits attached to the Complaint are considered "part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004). The "well-settled rule" is that "when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

## ANALYSIS

As a threshold issue, Binnifield devotes several paragraphs of her Complaint to allegations that Defendants violated the 2003 Consent Decree (Compl. ¶¶ 11-19) and requests that the Court enter a finding of contempt pursuant to the 2003 Consent Decree based on Defendants' alleged violations thereof. As the 2003 Consent Decree states: "[The entering court] shall retain jurisdiction of this matter for purposes of construction, modification, and **enforcement** of this Decree." (Compl., Ex. A. at 19) (emphasis added). Therefore, Binnifield's allegations regarding the 2003 Consent Decree, standing alone or as a basis for other claims, are not properly before this Court.

### *Count I (RICO Claim)*

A RICO claim is a unique cause of action that does not concern all instances of wrongdoing but focuses on the limited purpose of "eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). A civil RICO plaintiff must prove four elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Id.* Allegations of fraud in a civil RICO claim are subject to the heightened pleading standard set forth in Fed. R. Civ. P. 9(b), which requires a plaintiff to plead all allegations of fraud with particularity. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). This requires specifying the

time, place, and content of the alleged fraudulent communication. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir.1998) (*Goren*). A "pattern of racketeering activity" requires at least two predicate acts within a ten-year period. 18 U.S.C. § 1961(5). Establishing a pattern also requires a showing that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis omitted).

Binnifield's RICO claim is based on her allegations of mail fraud, but the allegations lack the requisite particularity to satisfy the heightened-pleading standard of Rule 9(b). (*See* Compl. ¶¶ 57-58.) When examined closely, it is apparent that Binnifield cannot state a RICO claim. The bases of her mail and wire fraud allegations appear to be the faxing of a residential loan application and a check designation form to Delta Funding Land America, a title company. Binnifield alleges: "In perpetrating the fraud of equity stripping and improvident lending under the guide of 'home remodeling,' defendants Mark Diamond and Terry Diamond utilized the United States Postal Service and wire services regulated by the United States." (*Id.* ¶ 57.) In the next paragraph, Binnifield includes the conclusory allegations that Defendants' "mail fraud, wire fraud, and other fraud offenses" constitute predicate acts pursuant to the RICO statute. (*Id.* ¶ 58.) Attempting to avoid the dismissal of her claim, Binnifield cites to two documents that are attached to her Complaint that were allegedly transmitted by fax. The first document appears to be a Uniform Residential Loan Application that Binnifield alleges was faxed to Delta Funding and then onto Land America. (Compl., Ex. B, 5-1 at 30.) The second document appears to be a "Check Designation Form" also faxed to Land America. (*Id.*,

Ex. B., 5-2 at 32-40.)[3] Binnifield further argues that Defendants "caused [her] application materials to be transmitted to the lender . . . [and] title company." (Resp. at 6.) But Binnifield fails to satisfy a key requirement of alleging wire fraud under 18 U.S.C. § 1343 (or mail fraud under 18 U.S.C. § 1341). Specifically, both mail fraud and wire fraud require the making of a materially false statement or the concealment of a material fact. *See Neder v. United States*, 527 U.S. 1, 25 (1999). Binnifield's Complaint contains no allegations that Defendants made any materially false statement or concealed any material facts in these documents.

Binnifield's allegations set out above fall well short of the particularity required by Rule 9(b). Binnifield fails to "at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Midwest Grinding v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1998). Furthermore, as Binnifield brings this count against multiple Defendants, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme," a requirement Binnifield has failed to meet. *Goren*, 156 F.3d at 726 (citing *Vicom, Inc. v. Harbridge Merchant Serv. Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)). Importantly, at bottom, the basis of her RICO claim — a mortgage loan application that was faxed to non-Defendant entities — indicates that Binnifield can assert no fraud allegations that could form the basis of a RICO claim. *See Carr v. Tillery*, 591 F.3d 909, 918 (7th Cir. 2010) ("RICO is not a proper vehicle for

---

[3] Although Binnifield alleges mail fraud, there does not appear to be any particular allegations that any of the Defendants mailed either of these two documents.

levering a breach of contract suit between citizens of the same state into federal court, and under a statute that entitles a successful plaintiff to treble damages and attorneys' fees."); *cf. Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 495 (7th Cir. 2005) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."). Therefore, Defendants' Motion to Dismiss is granted with respect to Count I.

## Count II (ECOA Claim)

The ECOA makes it unlawful for any "creditor" to discriminate against "any applicant with respect to any credit transaction" on the basis of race and a number of other prohibited grounds. 15 U.S.C. § 1691(a). The ECOA defines a "creditor" broadly to include an assignee who "participates in a credit decision, including setting the terms of the credit" but explicitly precludes assignee liability where an assignee did not participate in a credit decision and is being sued for acts "committed by another creditor." An assignee may be found liable for acts committed by another creditor, however, if it "knew or had reasonable notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction." 12 C.F.R. § 202.2(l).

Binnifield's allegations fail because they are barred by the ECOA's two-year statute of limitations. *Id.* § 1691e(f). According to Binnifield's complaint, the credit transaction at issue took place on September 11, 2007. Setting aside whether Binnifield has sufficiently pleaded that any of the Defendants are "creditors" under the ECOA, the credit transaction took place more than three years ago. Therefore, Defendants' Motion to Dismiss is granted with respect to Count II.

9

## Count III (FHA Claim)

Binnifield's Complaint does not clearly identify which specific provisions of the FHA she believes Defendants violated. In her response brief, Binnifield refers to 42 U.S.C. § 3605, which makes it "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms of conditions of such a transaction, because of race ...." 42 U.S.C. § 3605(a). The FHA then, in pertinent part, defines "residential real estate-related transactions" to include "the making and purchasing of loans or providing other financial assistance ... for purchasing, constructing, improving, repairing, or maintaining a dwelling." *Id.* § 3605(b).

Binnifield has failed to plead a violation of Section 3605(a), which applies only to transactions involving the "making or purchasing of loans" or "providing financial assistance." 42 U.S.C. § 3605(a). There are no allegations that any of the Defendants transacted directly with Binnifield regarding a loan or providing financial assistance. Binnifield's Complaint is sparse with respect to allegations defining the relationship between Binnifield and Delta and Land America, if any. Rather, Binnifield asserts the conclusory allegations that "Defendants are persons who engage in residential real-estate transactions, including the making and purchasing of loans or providing financial assistance ..." (Compl. ¶ 69.) *See Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do.") Binnifield's Complaint fails to state a claim for violation of the FHA, and this count is therefore dismissed.

## CONCLUSION

Defendants' Motion to Dismiss [15] is granted as to Counts I, II, and III. These counts are the only federal-law claims Binnifield brings. As the counts that give rise to federal jurisdiction have been dismissed, the Court relinquishes jurisdiction over Binnifield's state-law claims. *Al's Service Center v. BP Products North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claim."). Therefore, Binnifield's Complaint is dismissed for lack of subject-matter jurisdiction.

Date: 5/31/11

JOHN W. DARRAH
United States District Court Judge